IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Onco Investment Company, *et al.*, | Jointly Administered under Case No.: 04-10558 (DDS) |
| Debtors. | |
| MW Post Portfolio Fund Ltd., *et al.*, | Adversary Proceeding |
| Appellants, | |
| - against - | Case No.: 04-54122 (DDS) |
| Norwest Bank Minnesota, National Association (n/k/a Wells Fargo Bank, MN, National Association), *et al.* | Civil Action No.: 04-1543 (SLR) – Lead |
| Appellees. | |

**DEFENDANT-APPELLEES' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS CONSOLIDATED APPEALS**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...............................................................................................................4

I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THESE
      APPEALS ...........................................................................................................4

      A.    These Appeals are Constitutionally Moot....................................................4

            1.  Plaintiffs' One And Only Claim Against Oglebay Is Moot..........6

            2.  Plaintiffs' Claims Against Wells Fargo Are Moot ......................8

            3.  Plaintiffs' Claims Against DTC Are Moot .................................11

      B.    The Orders Are Subject To Rule 54(b)......................................................14

II.   THE PRECLUSIVE EFFECT OF THE CONFIRMATION ORDER
      MANDATES DISMISSAL OF THESE APPEALS .............................................15

CONCLUSION...............................................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Aluminum Co. of Am. v. Beazer East, Inc.*, 124 F.3d 551  (3d Cir. 1997).........................14

*Am. Nat'l Bank & Trust Co. v. Sec. of Hous. & Urban Dev.*, 946 F.2d 1286
    (7th Cir. 1991)...............................................................................................................14

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) .........................................11

*Bethel v. McAllister Bros., Inc.*, 81 F.3d 376 (3d Cir. 1996).............................................14

*Boucher v. Syracuse Univ.*, 164 F.3d 113 (2d Cir. 1999) ...................................................11

*Cent. States, Southeast & Southwest Areas Pension Fund v. Hunt Truck Lines*,
    296 F.3d 624 (7th Cir. 2002) .................................................................................20

*Covanta Onondaga Ltd. P'Ship v. Onondaga County Resource Recovery Agency*,
    318 F.3d 392 (2d Cir. 2003)...................................................................................15

*Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211 (3d Cir. 2003).........................9

*Eastern Air Lines, Inc. v. Brown & Williamson Tobacco Corp.*,
    *(In re Ionosphere Clubs, Inc.)*, 262 B.R. 604 (Bankr. S.D.N.Y. 2001) .................20

*EXDS, Inc. v. Ernst & Young LLP (In re EXDS, Inc.)*, 316 B.R. 817
    (Bankr. D. Del. 2004) ....................................................................................19, 20

*Fed. Sav. & Loan Ins. Corp. v. Huff*, 851 F.2d 316 (10th Cir. 1988). ...............................14

*GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189 (3d Cir. 2001) ..................................14

*Griffin v. Box Bros. Holding Co. (In re Box Bros. Holding Co.)*, 194 B.R. 32
    (D. Del. 1996) ........................................................................................................13

*Harris v. City of Houston*, 151 F.3d 186 (5th Cir. 1998)...................................................11

*In re Continental Airlines*, 91 F.3d 553 (3d Cir. 1996) .....................................................13

*Jersey Cenral Power & Light Co. v. New Jersey*, 772 F.2d 35
    (3d Cir. 1985)...........................................................................................8, 9, 10, 11

*Maxwell Commun. Corp. v. Societe Generale (In re Maxwell Commun. Corp.)*,
    93 F.3d 1036 (2d Cir. 1996)...................................................................................19

*Midway Motor Lodge v. Innkeepers' Telemanagement & Equip. Corp.*,
    54 F.3d 406 (7th Cir. 1995) ...................................................................................15

*Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180 (3d Cir. 2001) .........................13

*Owens v. Aetna Life & Cas. Co.*, 654 F.2d 218 (3d Cir. 1981) ........................................14

*Seven Words LLC v. Network Solutions*, 260 F.3d 1089 (9th Cir. 2001) .........................11

*U.S. Trustee v. Official Committee of Equity Security Holders*
    *(In re Zenith Electronic Corp.)*, 329 F.3d 338 (3d Cir. 2003) ...............................13

*Venuto v. Witco Corp.*, 117 F.3d 754 (3d Cir. 1997).........................................................20

## Statutes, Federal Rules and Regulations

N.Y. U.C.C. §8-102 cmt. 8 .......................................................................................12, 13

N.Y. U.C.C. §8-115 ........................................................................................................12

N.Y. U.C.C. §8-503 ........................................................................................................12

## Other Authorities

13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice and Procedure* §3533 (2d ed. 1984)............................................9

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice & Procedure* §4405 (2d ed. 2002)............................................15

SEC Release No. 34-47978; File No. SR-DTC-2003-02 (June 4, 2003) .........................12

## PRELIMINARY STATEMENT

Plaintiffs claim that these Appeals[1] are not moot or barred by the preclusive effect of the Confirmation Order, notwithstanding the fact that:

- the only relief plaintiffs seek in their complaint against the Debtor – declaratory relief preventing it from distributing any New Common Stock to Subordinated Note Holders until the Senior Note Holders have been paid both an Early Prepayment Premium and the Default Rate of Interest – is no longer available since that distribution has already occurred;

- the confirmed and consummated Plan fully released the Debtor of and from any and all liability in connection with Plan distributions;

- as plaintiffs conceded below, Wells Fargo, as Indenture Trustee, cannot be liable unless it actually received something under the Plan, which it undisputedly did not;

- plaintiffs told the Bankruptcy Court, point-blank, that the only reason Wells Fargo remained in the case was in the off-chance that the Plan may be amended to put the Indenture Trustee back into the distribution chain, which never happened;

- plaintiffs neither objected to, nor appealed from, the inclusion in the Confirmation Order of a broad release of any and all claims against DTC – which owed no contractual, statutory or other duty to plaintiffs – arising out of or in connection with its performance as Disbursing Agent;

- the Confirmation Order expressly overruled plaintiffs' objections to the Plan, all of which were predicated on the identical argument they have made in this adversary proceeding, namely, that the Plan improperly extinguished their alleged contractual rights under the subordination provisions of the Indenture; and

- plaintiffs could have taken a number of actions to preserve their right to seek appellate review of these issues, including seeking a stay, or requesting that the Bankruptcy Court require the Debtor to establish a sufficient reserve of New Common Stock to satisfy their claims, pending an appeal of the Confirmation Order – but plaintiffs opted to take none of

---

[1] All capitalized and abbreviated terms not otherwise defined herein shall have the meanings ascribed to such terms in Defendant-Appellees' Memorandum of Law in Support of Their Motion to Dismiss Consolidated Appeals (referred to herein as "DB at __"). Citations to "PB at __" refer to Appellants' Answering Brief in Response to Motion to Dismiss Appeal.

these protective measures and, instead, allowed distributions under the Plan (including distributions of $102 million to themselves) to be made.

Rather than give up the ghost, or address these dispositive facts head-on, plaintiffs ask this Court instead to ignore the pleadings, as well as their representations and concessions to the court below, and allow them to proceed with their appeals based on *entirely new theories that are nowhere to be found in their complaint and were never asserted or litigated below*. In the process, plaintiffs ask the Court to rewrite the complaint and permit them to seek relief that would adversely affect the rights of non-parties (the Subordinated Note Holders) hereto.

But suing the wrong parties is not the only mistake plaintiffs have made. They also chose to litigate (unsuccessfully) the issues raised on these Appeals by interposing objections to the Plan that were identical to the arguments they asserted in this adversary proceeding. This is where the so-called "savings clause" comes into play. On its face, the savings clause could not be any clearer – it states that "any and all rights, arguments and defenses relating to the subordination provisions contained in the . . . Indenture are expressly preserved . . . and shall be enforced in accordance with a Final Order of the Bankruptcy Court resolving the parties' respective rights under the subordination provisions." It says "Final Order of the Bankruptcy Court," not "Final Order in the Adversary Proceeding."

And that is exactly what the Confirmation Order is – a "Final Order of the Bankruptcy Court." The savings clause would have permitted plaintiffs, at their election, to litigate all issues relating to the subordination provisions of the Indenture in this adversary proceeding. But they elected instead to take a second bite at the judicial apple by interposing numerous objections based on the Plan's treatment of the subordination provisions. This was a strategic decision on their part. They did not have to do so. Having chosen to do so, however, they must now live with the consequences of that choice.

Nor were the objections to the Plan "different and distinct," as plaintiffs claim, from the issues presented by plaintiffs' complaint and the summary judgment motions filed in this adversary proceeding. On the contrary, plaintiffs raised a host of objections to the Plan, all of which – and, in particular, their "impairment" objection – were predicated on the contention that their contractual rights under the subordination provisions of the Indenture were being improperly extinguished by the Plan. This is the same argument plaintiffs made below in seeking and opposing summary judgment. How they can claim otherwise on this motion is mind-boggling. The Bankruptcy Court left no doubt as to what it was adjudicating when it overruled these Plan objections "for the reasons set forth" in its summary judgment decisions in the adversary proceeding.

Plaintiffs could have appealed the Confirmation and sought a stay, or the establishment of a reserve of the New Common Stock, pending appeal, but they did not. As a result of plaintiffs' own actions, the Confirmation Order became a "Final Order of the Bankruptcy Court" within the meaning of the savings clause as soon as the time to appeal from the Confirmation Order ran.[2] The savings clause did not preserve plaintiffs' right to pursue *these* Appeals. All it did was to preserve plaintiffs' right to obtain a final, nonappealable order from the Bankruptcy Court, which is precisely what the Confirmation Order constitutes. The savings clause thus dooms, rather than "saves," these Appeals.

---

[2]    Even under plaintiffs' faulty reading of the savings clause, the claims against the existing defendants are not sustainable because Plan implementation has foreclosed the relief sought by plaintiffs against these defendants.

3

# ARGUMENT[3]

## I.

## THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THESE APPEALS

### A.    These Appeals Are Constitutionally Moot

Defendants argued in their opening brief that dismissal of these Appeals was required because the Plan's prospective effects, and the events that have occurred, both during and after consummation of the Plan, have rendered plaintiffs' claims constitutionally moot, thereby depriving this Court of subject matter jurisdiction with respect thereto. Defendants pointed out that the declaratory relief sought by plaintiffs was no longer available because the very conduct plaintiffs sought to prevent – distribution of the New Common Stock – had already occurred, with the imprimatur of the Bankruptcy Court, and could not be undone.

Defendants also noted that the same fatal disease doomed plaintiffs' turnover claims, since a party cannot "turn over" property it never receives (as in the case of the Indenture Trustee) or that has already been distributed (as in the case of DTC). Defendants further argued that plaintiffs' claims for money damages against the Indenture Trustee and DTC were moot because (a) no live case or controversy exists between plaintiffs and the Indenture Trustee – plaintiffs' claims against the Indenture Trustee were predicated solely on its *actual receipt* of legal dominion and control over property distributed by the Debtors, which did not occur; and (b) with respect to DTC (i) the Confirmation Order broadly released DTC from any "liability to

---

[3]    Plaintiffs devote a substantial portion of their brief to merits arguments that are irrelevant to the instant motion and reflect a view of the world that bears little or no resemblance to reality. For example, plaintiffs state, without citation to the record, that their claim for an Early Prepayment Premium and Default Rate of Interest was "disallowed" by the Bankruptcy Court under the Bankruptcy Code. (PB at 9). This is flatly wrong – the Bankruptcy Court did not "disallow" any claim for such payments. Rather, it held that no obligation to make such payments existed in light of the reinstatement of the Senior Notes under the Plan, pursuant to Bankruptcy Code §1124. This is but one example of the "stretching of the truth" that permeates plaintiffs' brief.

any party for actions taken in accordance with the Plan," and (ii) the complaint failed to identify any legal duty owed by DTC to plaintiffs that could give rise to any claim against it.

Unable to respond to these dispositive arguments, plaintiffs simply ignore them. Their brief thus consists of a series of diversionary arguments that do not withstand scrutiny. They argue, *first,* that defendants' constitutional mootness claim "is premised on the assertion that the Plan decided the issues on appeal, once and for all, and . . . are no longer subject to appellate review," and that this premise is "wrong, as Oglebay's Plan did <u>not</u> decide the issues that are now before the Court in this appeal." (PB at 18). But in advancing this argument, plaintiffs deliberately confuse and conflate the legal effect of the Plan provisions (*i.e.,* defendants' *res judicata* and claim preclusion arguments) with the fact of Plan confirmation and consummation – intervening events that have foreclosed the ability of this Court to grant any effective relief (plaintiffs' mootness arguments).

Plaintiffs next argue that the so-called "savings clause" in the Plan "specifically preserves" their right to seek enforcement of the subordination provisions notwithstanding confirmation and consummation of the Plan. (*Id.*). As demonstrated in Part II of this brief, however, the savings clause does not preserve plaintiffs' right to pursue these Appeals. Far from it. Nor does it preserve plaintiffs' right to pursue an appeal of claims that were rendered moot by intervening events. Plaintiffs' twisted reading of the savings clause, if accepted, would turn the doctrine of constitutional mootness on its head.

Plaintiffs also argue that their claims are not constitutionally moot because "ample meaningful relief" is still available should plaintiffs prevail on appeal. But rather than point to any specific relief sought in their complaint with respect to the claims actually alleged, they have chosen to reinvent the wheel, seeking forms of relief that are nowhere to be found in the complaint or are based on sheer speculation. For example, their claims for declaratory relief

5

against the Debtor and the Indenture Trustee have been mystically transfigured, for the first time in their answering brief, into a claim against non-parties (*i.e.*, the Subordinated Note Holders). Similarly, their claims for turnover against the Indenture Trustee and DTC have been reduced to a request for an order to direct *the Debtor* (which was not the subject of a turnover claim in the first place) and DTC "to turnover all New Common Stock that has not yet been irrevocably distributed to holders of the Subordinated Notes." In advancing this argument, plaintiffs have resorted to pure sophistry. They have submitted no affidavit or evidence to contradict the only evidence in the record, which stands without contradiction, demonstrating that all of the New Common Stock has in fact been distributed.

Finally, as a last gasp, plaintiffs assert that their damage claims (against the Indenture Trustee and DTC) are not moot (a) because, even if all of the New Common Stock has been distributed, they may still recover damages against the Indenture Trustee for "the Indenture Trustee's knowing and willful participation in a violation of the subordination provisions of the Indenture," a claim that is nowhere to be found in the complaint and is belied by both the clear and unambiguous terms of the Indenture and plaintiffs' own representations to the Bankruptcy Court; and (b) because the release embodied in the Confirmation Order does not completely immunize DTC for damage claims that are preserved by the "savings clause." Each of these specious arguments is addressed, in turn, below.

### 1.    Plaintiffs' One And Only Claim Against Oglebay Is Moot

Plaintiffs do not dispute the fact that implementation of the Plan has rendered their one and only claim against Oglebay (for declaratory relief) moot. As against Oglebay, plaintiffs sought only a declaration that "no distributions may be made by any of the Debtors, under a plan of reorganization or otherwise, to any Subordinated Noteholder or the Subordinated Notes Trustee, on behalf of any Subordinated Noteholder, unless and until Senior Noteholders

6

have been paid in full in cash all amounts owed to them under the Senior Notes. . . ." (Reinth. Aff. Ex. E (Am. Compl.) §57). Because the Debtors consummated the Plan on or about January 31, 2005 by, among other things, distributing the New Common Stock to Subordinated Note Holders (Walk Aff. ¶3),[4] no live case or controversy exists that could form the basis for this Court granting any declaratory relief against Oglebay. It is simply too late to grant such relief.

Because the Court cannot provide plaintiffs the declaratory relief they sought against the Debtor, they beg the Court to allow them to pursue a different form of declaratory relief on appeal. They ask the Court to declare on appeal that the "Subordinated Notes are subordinated to the prior payment in full of all remaining amounts due with respect to the Senior Notes, including the acceleration premium and default interest (*which declaration in turn could serve as the basis for an order authorizing recovery of any property, including New Common Stock, wrongfully retained in breach of the subordination provisions*)." (PB at 22) (emphasis added).

There are two problems with this. *First*, the relief plaintiffs seek is not found in the complaint and, therefore, cannot be granted by these Appeals. *Second*, and more significantly, the only parties against whom such an order could conceivably be directed are the former Subordinated Note Holders, to whom the New Common Stock was distributed. None of them, however, is a party to these Appeals. Plaintiffs could have elected to sue the Subordinated Note Holders, but chose not to. Whether they may still do so, in light of the preclusive effect of

---

[4]    Ms. Walk made clear that the Debtors have completed implementation of the Plan with respect to distributions to the Subordinated Note Holders. Plaintiffs – who proffer no contrary facts – nevertheless question whether Ms. Walk had personal knowledge of these facts. (PB at 23). For the avoidance of doubt, Ms. Walk has submitted a supplemental affidavit attesting to her personal knowledge of the facts set forth in her original affidavit. *See* Supplemental Affidavit of Rochelle F. Walk, sworn to on the 4th day of May 2005, submitted herewith. *See also* the Affidavit of Susan Geigel, sworn to on the 5th day of May 2005, corroborating this fact.

the Confirmation Order, raises an academic question that is not before the Court. One thing is clear – plaintiffs may not, via these Appeals, add new claims to their complaint or seek new forms of relief that, if granted, would adversely affect the rights of non-parties.[5] Yet that is precisely what they are trying to do.

## 2.  Plaintiffs' Claims Against Wells Fargo Are Moot

Plaintiffs do not contend that their claims against the Indenture Trustee, including their claims for turnover and damages (in the event the Indenture Trustee failed to turnover any distributions it received from the Debtors), survived implementation of the Plan. Indeed, once the Plan took the Indenture Trustee out of the chain of distribution, this litigation suffered from an absence of a live case or controversy with respect to plaintiffs' claims against the Indenture Trustee. Now that the Plan has been implemented (and there is no longer any possibility that the Plan can be amended again to provide for distributions to the Indenture Trustee), this defect – which deprives this Court of subject matter jurisdiction over plaintiffs' claims – cannot be cured.

Rather than abandon these moot (and meritless) claims, however, plaintiffs posit two arguments for keeping their Appeals alive *vis-à-vis* the Indenture Trustee. They argue, *first*, that claims for money damages cannot be mooted, citing *Jersey Central Power & Light Co. v. New Jersey*, 772 F.2d 35, 41 (3d Cir. 1985). But this contention ignores that a damages award is a remedy, not a claim, that may only be imposed after liability on an underlying claim has been established, *i.e.*, it presupposes the existence of a set of facts giving rise to liability. Without a

---

[5]     The only proceeding to which the former Subordinated Note Holders were parties was the confirmation proceeding, wherein the Bankruptcy Court finally determined that distributions to the Subordinated Note Holders could be made under the Plan because the Senior Note Holders were being paid in full and, accordingly, the subordination provisions of the Indenture were not triggered. Indeed (and notwithstanding the discussion in the disclosure statement of the subordination risks for Subordinated Note Holders (PB at 10-11)), because the Bankruptcy Court put the subordination issues to bed during the confirmation proceeding and in the Confirmation Order, any modification of the rights of the Subordinated Note Holders at this juncture would be an impermissible modification of the Plan, in violation of Bankruptcy Code §1127. (*See* DB at 32-34).

viable underlying claim, no damages can be awarded.  13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* §3533.3 (2d ed. 1984).  And there's the rub, for they have no such claim, given that the Indenture Trustee did not distribute any New Common Stock to Subordinated Note Holders.[6]

       The Indenture Trustee had one, and only one, duty to Senior Note Holders under the Indenture – *i.e.*, in the event that the subordination provisions were triggered by the failure of the Debtors to pay Senior Note Holders in full, the Indenture Trustee was contractually obligated to transfer any distribution of assets it received from the Debtors to the party responsible for making distributions for application to the payment of "all Senior Indebtedness remaining unpaid." (Reinth. Aff. Ex. G (Indenture) §11.02).  The Indenture Trustee owed no other duty or obligation to the Senior Note Holders:

> With respect to the holders of Senior Indebtedness, the Trustee undertakes to perform or to observe *only such of its covenants and obligations as are specifically set forth in this Article Eleven*, and *no implied covenants or obligations* with respect to the holders of the Senior Indebtedness shall be read into this Indenture against the Trustee.  The Trustee *shall not be deemed to owe any fiduciary duty* to the holders of Senior Indebtedness . . . . (*Id.* §11.04) (emphasis added).

       Thus, as plaintiffs have repeatedly admitted, their turnover claim and money damages demand against the Indenture Trustee were entirely contingent on the receipt by the

---

[6]    Plaintiffs' own cases (PB at 24-25) illustrate this point.  In each case, while injunctive or declaratory relief was mooted by subsequent events, plaintiffs' demand for damages survived because it was based on past wrongful conduct. *See Jersey Cent. Power*, 772 F.2d at 36-37, 39-40 (appeal of order granting declaratory and injunctive relief prohibiting state from enforcing statute restricting shipping routes was mooted when plaintiff made shipment pursuant to district court order; however, issue of a damages award to remedy harm suffered as a result of state's prior enforcement of the statute was not mooted); *Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211, 217-18 (3d Cir. 2003) (student's graduation foreclosed her claim for declaratory and injunctive relief related to school's refusal to grant student's bible group access to school's public forum, but it did not moot issue of a damages award for prior acts of discrimination under the Equal Access Act).  Here, in contrast, no past wrongful conduct on which to predicate a claim for damages against the Indenture Trustee has, or is alleged to have, occurred.

Indenture Trustee of distributions under the Plan. Plaintiffs could not have said it any clearer in opposing the Indenture Trustee's cross-motion for summary judgment:

> And then there is finally the technical issue . . . of whether Wells Fargo stays in the case. Wells Fargo, as the Court I think knows, was in the Plan as the principal person receiving distribution, and then was [taken] out of the Plan. The Indenture[] Trustee, for better or for worse, is the representative of the subordinated notes. It could be back in the Plan again. It could get distribution.
>
> \*       \*       \*
>
> We're [*i.e.,* the plaintiffs] *not seeking* anything beyond a judgment for whatever the Indenture[] Trustee *gets* [as a distribution under the Plan]. *We concede that this is not a guarantee or a Letter of Credit in the sense that the Indenture[] Trustee is not personally liable unless it gets something.* Then it is. It has an absolute obligation to turn it over, and *we seek no further order*.

(Reinth. Aff. Ex. FF at 28) (emphasis added).[7]  Noticeably absent from plaintiffs' brief is any attempt to deal with this telling, and fatal, concession and representation to the Bankruptcy Court. But burying their head in the sand will not make it go away.

Plaintiffs also told the Bankruptcy Court that the only reason the Indenture Trustee should remain in the case is due to the *possibility* that the Plan could be amended to place the Indenture Trustee back into the distribution chain. (Reinth. Aff. Ex. R. (Pl. Reply Brief) at 22). Consummation of the Plan, however, without any such amendment completely foreclosed that possibility. Accordingly, the factual predicate for plaintiffs' claims against the Indenture Trustee simply does not (and will never) exist and, thus, "changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful

---

[7]      *See also* Plaintiffs' Reply Brief in Opposition to Wells Fargo Bank's Cross-Motion for Summary Judgment ("If [the Indenture Trustee] never receives any property from the Debtors it will have nothing to turn over to the Senior Noteholders"). (Reinth. Aff. Ex. R. (Pl. Reply Brief) at 22).

relief." *Jersey Cent. Power*, 772 F.2d at 39.  In light of this, plaintiffs' continued assertion of

any claim against the Indenture Trustee is frivolous.

Recognizing this, plaintiffs – without articulating a possible legal theory or even

facts in support – attempt to pull the wool over the Court's eyes by advancing an entirely new

claim on this motion.  They now claim an entitlement to damages "for losses suffered as a result

of the Indenture Trustee's knowing and willful participation in a violation of the subordination

provisions of the Indenture." (PB at 23).  This newly-concocted claim is nowhere to be found in

their complaint, and is belied by both the express language of the Indenture and plaintiffs' frank

concessions to the Bankruptcy Court quoted above.  Plaintiffs cannot avoid dismissal on

mootness grounds by asserting an entirely new claim for the first time on appeal.[8]

### 3.    Plaintiffs' Claims Against DTC Are Moot

Plaintiffs strain to avoid dismissal of their claims against DTC, arguing incredibly

that the Plan release does not protect DTC from liability for making distributions to Subordinated

Note Holders.  But that is precisely what the release says:

> The Debtors, the Reorganized Debtors and any Disbursing Agent
> *(including DTC)* shall only be required to act and make distributions in
> accordance with the terms of the Plan.  Such parties shall have no (A)
> liability to any party for actions taken in accordance with the Plan . . . .

---

[8]    *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1097-98 (9th Cir. 2001) (rejecting
attempt to have appellate court read a new, implicit damages claim into complaint from general prayer for
relief); *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("A request for damages . . . will not
avoid mootness if it was inserted after the complaint was filed in an attempt to breathe life into a moribund
dispute.") (internal quotation marks and citation omitted); *Harris v. City of Houston*, 151 F.3d 186, 191
(5th Cir. 1998) (determining that there was "no support for the appellant's notion that we may fashion
relief not requested below in order to keep a suit viable"); *see also Arizonans for Official English v.
Arizona*, 520 U.S. 43, 71 (1997) (admonishing courts to closely inspect damages claims that are "extracted
late in the day from [a plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain
mootness").

(Reinth Aff. Ex. H (Plan) §VI.D.1.b.v). This broad release – to which the Senior Note Holders did not object – was intended to, and expressly did, release DTC from any all and all liability in connection with making distributions under the Plan. Nothing could be clearer.

Alternatively, plaintiffs argue that they have sued DTC not in its capacity as a Disbursing Agent under the Plan but because it is the "sole record holder of the Subordinated Notes." (PB at 25). Where does the complaint say that? Plaintiffs point to the fact that DTC was named as a defendant prior to Plan confirmation, but so were all of the other defendants. That was the whole point of the lawsuit – to prevent distributions from being made to Subordinated Note Holders pursuant to the Plan. DTC was named a defendant only after the Plan was amended to provide that it (not the Indenture Trustee) would be the Disbursing Agent for distributions to Subordinated Note Holders. Plaintiffs' after-the-fact rationale for naming DTC as a defendant lacks credibility and distorts the role played by DTC under the Plan.[9]

Under applicable New York law, all interests in a financial asset held by a securities intermediary, such as DTC, are "held by the securities intermediary for the entitlement holders, are *not property of the securities intermediary*, and are not subject to claims of creditors of the securities intermediary." N.Y. U.C.C. §8-503(a) (McKinney 2002) (emphasis added). Furthermore, a securities intermediary that transfers a financial asset pursuant to an effective "entitlement order" is not liable to anyone having an adverse claim to the financial asset. *Id.* §8-115. As the New York U.C.C. commentary makes clear, an "entitlement order" includes a notification communicated to a securities intermediary, whether by an entitlement holder or

---

[9]    *See* SEC Release No. 34-47978; File No. SR-DTC-2003-02 (June 4, 2003), *available at* http://www.sec.gov/rules/sro/34-47978.htm, which makes clear that DTC may only take very limited actions with respect to the securities it handles. DTC accepts deposits of securities from its participants, credits those securities to the depositing participants' accounts and effects book-entry movements of those securities. *Id.* DTC can and did nothing else with respect to New Common Stock.

another person or entity that is authorized to initiate entitlement orders for the entitlement holder, which directs transfer or redemption of financial assets to which an entitlement holder has a security entitlement. *Id* §8-102 cmt. 8.

In any event, whatever claims plaintiffs think they may have against DTC – which (i) has no property rights in the securities it receives as a securities intermediary; (ii) as record holder, cannot be held liable to third parties for securities transfers it effects; and (iii) owes plaintiffs no contractual obligations whatsoever – were mooted by the grant to DTC of a broad release, unopposed by plaintiffs and approved by the Bankruptcy Court, in the final, non-appealable Confirmation Order.[10]

---

[10]    Plaintiffs also take a very myopic view of equitable mootness, arguing only that unless reversal will unravel the Plan in its entirety, equitable mootness does not apply. (PB at 27). This is not the law. As plaintiffs acknowledge (but fail to address), there are several factors considered by courts in deciding whether to dismiss an appeal on grounds of equitable mootness. *U.S. Trustee v. Official Committee of Equity Security Holders (In re Zenith Electronic Corp.)*, 329 F.3d 338, 343 (3d Cir. 2003); *In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996); *Griffin v. Box Bros. Holding Co. (In re Box Bros. Holding Co.)*, 194 B.R. 32, 40-45 (D. Del. 1996). These factors have been met here. *First*, the Plan has been substantially consummated and reversal would require the unraveling of reorganization transactions (*i.e.*, distributions to Subordinated Note Holders) that would likely be impossible given the active trading of the New Common Stock. *Second*, in arguing that they did not need to seek a stay of the Confirmation Order because they were not appealing that Order, plaintiffs demonstrate exactly where they went wrong. Rather than appeal the Confirmation Order following the Bankruptcy Court's rejection of their subordination arguments in those proceedings (and seek a stay pending appeal), plaintiffs allowed distributions to be made (including $102 million to themselves) and now are trying to attack the Plan provisions through ancillary litigation. This tactical decision is fatal to plaintiffs' position. *See Continental Airlines*, 91 F.3d at 562 ("Because the [appellant's] failure to post the bond needed to get a stay permitted the consummation of the plan, this factor weighs heavily in favor of" dismissing appeal on equitable grounds). *Third*, allowing plaintiffs to collaterally attack the Plan would work a gross inequity upon the true parties in interest – the Subordinated Note Holders – who are not parties to these Appeals and have a right to rely on the final, non-appealable Confirmation Order which resolved the subordination issues plaintiffs seek to re-litigate. *See Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 189 (3d Cir. 2001) (third parties, including bondholders, were protected by doctrine of equitable mootness where parties were not before reviewing court and had relied on plan confirmation); *Continental Airlines*, 91 F.3d at 562 ("High on the list of prudential considerations taken into account by courts considering whether to allow an appeal following a consummated reorganization is the reliance by third parties, in particular investors, on the finality of the transaction."). *Finally*, the public policy of finality of bankruptcy judgments will be served by dismissing the Appeals – any other result would sanction plaintiffs' collateral attack on the Confirmation Order, from which plaintiffs *chose not to appeal*.

B.      **The Orders Are Subject To Rule 54(b)**

Plaintiffs claim that the Orders appealed from did not require Rule 54 certification because the counterclaims that remain pending "only have relevance in the event that this Court reverses the Bankruptcy Court's Orders." (PB at 16). The law of the Third Circuit, however, is to the contrary – a party must seek Rule 54 certification wherever there are any claims remaining in the lower court, even if those claims have become analytically meaningless in light of an order of the court (*i.e.*, derivative claims). *Owens v. Aetna Life & Cas. Co.*, 654 F.2d 218, 220 n.2 (3d Cir. 1981) (an order for summary judgment did not become final for purposes of Rule 54 because a third-party contribution claim remained outstanding despite the fact that the claim "became groundless once Aetna's motion for summary judgment was granted" because "to read 'practicalities' into the already plain language of Rule 54(b) would only foster uncertainty in an area of the law that must remain clear"); *see also Fed. Sav. & Loan Ins. Corp. v. Huff*, 851 F.2d 316, 317-21 (10th Cir. 1988); *Am. Nat'l Bank & Trust Co. v. Sec. of Hous. & Urban Dev.*, 946 F.2d 1286, 1290 n.6 (7th Cir. 1991) (noting that, in Third Circuit, even claims which "cannot 'logically survive a judgment'" still require formal disposition or Rule 54(b) certification).[11]

Unfortunately for plaintiffs, it is simply too late for them to obtain Rule 54(b) certification. They made a strategic choice to litigate their objections to the Plan and a strategic

---

[11]    Plaintiffs' cases do not stand for the proposition that Rule 54 certification is not required if the remaining claims are effectively mooted by the decision being appealed. Notably, in each of plaintiffs' cases, there were no outstanding claims left unresolved. *See Aluminum Co. of Am. v. Beazer East, Inc.*, 124 F.3d 551, 559 (3d Cir. 1997) (remaining counterclaims had been submitted to arbitration by a consent order which "guarantee[d] that there will be no further proceedings before the district court in this action"); *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 198 n.3 (3d Cir. 2001) (summary judgment order was final order for appealability purposes, without discussing Rule 54(b) and despite fact that counterclaims had been dismissed without prejudice, where order denied affirmative defenses which were identical to counterclaims); *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381-82 (3d Cir. 1996) (order was final for appealability purposes, without discussing Rule 54(b), where order was dispositive of all litigation and there were no remaining claims).

14

decision not to appeal from the Confirmation Order, which is now a final, non-appealable judgment having preclusive effect. Having made their bed, they must now sleep in it.

## II.

### THE PRECLUSIVE EFFECT OF THE CONFIRMATION ORDER MANDATES DISMISSAL OF THESE APPEALS[12]

Plaintiffs' principal contention in their answering brief is that the Confirmation Order does not preclude them from pursuing these Appeals because the so-called "savings clause" embodied in Section XI.C.4 of the Plan preserves their right to do. (PB at 30-31). This contention, however, is flatly contradicted by the plain language of this provision *and* is wholly inconsistent with plaintiffs' written objections to the Plan – all of which were founded on plaintiffs' repeated cry that the Plan was eviscerating their contractual right to enforce the subordination provisions of the Indenture.

> Section XI.C.4 of the Plan, in pertinent part, states that:
>
> Notwithstanding anything to the contrary . . . any and all rights, arguments and defenses relating to the subordination provisions contained in the Old Senior Subordinated Note Indenture are expressly preserved solely for the holders of Class 3 Claims and Class 7 Claims, the Debtors, the Reorganized Debtors, the Indenture Trustee and the Creditors' Committee and *shall be enforced in accordance with a Final Order of the Bankruptcy Court resolving the parties' respective rights under such subordination provisions.*

(Reinth. Aff. Ex. H (Plan) §XI.C.4) (emphasis added). On its face, the savings clause only preserves plaintiffs' right to litigate their rights under the subordination provisions of the

---

[12]    Plaintiffs contend that the preclusive effect of the Confirmation Order must be presented first to the Bankruptcy Court because it involves an "interpretation of the Oglebay Plan." (PB at 29). They are dead wrong. The preclusive effect of the Confirmation Order is a question for this Court to decide, not the Bankruptcy Court. *See Covanta Onondaga Ltd. P'Ship v. Onondaga County Resource Recovery Agency*, 318 F.3d 392, 398 (2d Cir. 2003) ("'In the law of preclusion, . . . the court rendering the first judgment does not get to determine that judgment's effect . . . .'" (quoting *Midway Motor Lodge v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406, 409 (7th Cir. 1995)); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* §4405 (2d ed. 2002).

Indenture until the entry of a "Final Order of the Bankruptcy Court resolving the parties' respective rights under such subordination provisions." (*Id.*) It says "Final Order of the Bankruptcy Court," not "Final Order in this Adversary Proceeding." Plaintiffs do not dispute, nor could they, that the Confirmation Order constitutes a "Final Order" (defined in Section I.A.40 of the Plan as an order or judgment that is no longer subject to appeal) of the Bankruptcy Court, and they concede that the Orders that are the subject of these Appeals are not "Final Orders" within the meaning of the Plan.[13] (PB at 19 n.12).

Thus, the only question that remains is whether the Confirmation Order resolved the subordination issue. Plaintiffs claim that it did not, because the objections to confirmation were "different and distinct from the issues that this Court will be called upon to decide in this appeal" and that, in their confirmation objections, plaintiffs "only argued that, notwithstanding the Plan's designation of the Senior Notes as 'unimpaired,' the treatment of the Senior Notes under the Plan in fact rendered the Senior Notes impaired as a matter of law and that, as a result, the Plan could not be confirmed because the votes of the Senior Noteholders had not been solicited." (PB at 32).

This is a gross distortion of the record. Defendants urge the Court to review the written objections to the Plan in their entirety, which the Bankruptcy Court expressly overruled "[f]or the reasons set forth" in the Court's summary judgment decisions in this proceeding.[14] (*See* Reinth. Aff. Ex. AA (Oct. 5 Hearing Tr.) at 109). There is no fair reading of plaintiffs'

---

[13]    Plaintiffs take defendants to task for not devoting more discussion regarding this provision in defendants' opening brief. (PB at 20). Defendants did not do so because the text of the savings clause could not be any clearer – the parties' right to litigate the subordination issue was preserved only until a Final Order resolving the subordination issue (here, the Confirmation Order) was entered by the Bankruptcy Court. What more need be said?

[14]    Given this express finding and incorporation by reference, plaintiffs' suggestion that their objections were not "actually and necessarily litigated and decided" by the Bankruptcy Court in confirming the Plan (PB at 31) is an affront to the Court. No further elaboration was required.

submissions to the Bankruptcy Court that would support the claim that the "only objection" interposed by plaintiffs was an entirely different, distinct and limited issue relating to "impairment" unrelated to the issues presented on these Appeals.   Indeed, plaintiffs "impairment" objection alone raised the core issue presented in these Appeals, *i.e.*, the nature and extent of plaintiffs' contractual rights of subordination and whether they were being impaired.  Any argument to the contrary is pure hogwash.

In their written objections to the Plan, plaintiffs interposed no fewer than five separate objections, in language that mirrored their claims and arguments on summary judgment in the adversary proceeding.  Their objections were as follows:

- **The Senior Note Holders Were Impaired.**  Plaintiffs argued first that the Debtors should have solicited their votes because the Plan impaired their contractual rights, stating that "[even] under the Debtors' view of reinstatement, the Senior Noteholders will not retain the rights they have now against the Subordinated Noteholders. . . . [T]he Senior Noteholders are, in fact, impaired since the Plan purports to cancel their subordination rights against the Subordinated Noteholders."   (Reinth. Aff. Ex. Y (Plaintiffs' Objection) at 6-7).  Because this objection was premised on the Plan's elimination of the Senior Note Holders' purported subordination rights, the Bankruptcy Court actually and necessarily had to decide whether those subordination rights were being "impaired" by the Plan.

- **The Plan Was Not Proposed In Good Faith**.   Plaintiffs' second objection charged that the Plan was not proposed in good faith because it sought to "extinguish the Senior Noteholders' rights to collect amounts they owed *from third parties*, namely the Subordinated Noteholders . . . ."   (*Id.* at 8).  Again, to decide this issue, the Bankruptcy Court necessarily had to determine the extent of plaintiffs' contractual rights against those parties.

- **The Plan Violated Bankruptcy Code §510(a).**  Plaintiffs' third objection was that the Plan could not be confirmed since it violated a provision of the Bankruptcy Code – section 510(a) – because "the Debtors . . . not only ignored the Senior Noteholders' rights under the Subordination Contract, but have intentionally tried to impair them under the guise of 'unimpairment.'"   (*Id.* at 12).  They made the same argument on summary judgment in this proceeding.

17

- **The Plan Effected Impermissible Third Party Releases.**  Plaintiffs'
  fourth objection was that the Plan's "purported release of the obligations
  of the Subordinated Noteholders and Subordinated Notes Trustee owing to
  Senior Noteholders constitutes an impermissible third party release" under
  Third Circuit law and specifically demanded that the Court "rule on the
  propriety of the releases of the Subordinated Noteholders' and
  Subordinated Notes Trustee's obligations . . . ." (*Id.* at 2, 13). They made
  the identical argument on the cross-motions for summary judgment
  (Reinth. Aff. Ex. K at 18-19; Ex. V at 18-19), which was rejected by the
  Bankruptcy Court.

- **The Debtors' Expansion of 11 U.S.C. §1124 To Modify Contractual
  Rights Between Non-Debtors Violates All Applicable Bankruptcy
  Law.**  To support this fifth, and final, objection, plaintiffs argued that the
  Plan violated section 1124 of the Code, which did not permit the Debtor to
  impact the contractual rights of Senior Note Holders against Subordinated
  Note Holders and, in support thereof, expressly incorporated their
  memorandum of law in support of their motion for summary judgment in
  this proceeding.[15] (Reinth. Aff. Ex. Y (Plaintiffs' Objection) at 13-14).

Thus, in their objections to the Plan, plaintiffs did not limit themselves to a single,

discrete issue unrelated to the adversary proceeding.  On the contrary, they took a second bite at

the judicial apple, arguing, five different ways, that the Plan should not be confirmed because it

effected a loss of their purported subordination rights.  For plaintiffs to claim otherwise in their

answering brief is to strain credulity.

Not only did plaintiffs make the identical arguments in their objections to the Plan

as they did in seeking and opposing summary judgment herein, the Bankruptcy Court

specifically and squarely addressed and rejected all of their objections "for the same reasons" it

had previously granted summary judgment in favor of defendants in this proceeding:

> The first [objection] on my agenda, which I'm using as my checklist,
> which has not been resolved, is the objection of the Ad Hoc Committee

---

[15]    Plaintiffs, in their objections to the Plan, expressly argued that Bankruptcy Code §1124 could not
be used to alter contractual rights of third party non-debtors. (*Id.* at 13-14).  This is the exactly what they
are arguing in this adversary proceeding. (Reinth. Aff. Ex. R. at 7 (requesting that the Bankruptcy Court
"enforce the Subordination Contract in accordance with its terms and not expand 11 U.S.C. §1124(2) to
modify contractual rights between non-debtors")).

and Senior Secured Noteholders.    For the reasons set forth in my
memorandum of decision on their summary judgment in the adversary
proceeding, and on Wells Fargo's cross motion for summary judgment
entered on the docket in the adversary proceeding #04-5122, at dockets
#53, 55, 56, I overrule those objections.

(Reinth. Aff. Ex. AA (Oct. 5 Hearing Tr.) at 109-110).[16]  This ruling was expressly incorporated

into the Confirmation Order, which overruled plaintiffs' objections in their entirety, on the merits

and with prejudice.[17]  (Id. Ex. EE (Confirmation Order) at 14).

Given the complete identity of the subordination issues raised by plaintiffs in the

adversary proceeding and their Plan objections, and the Bankruptcy Court's final adjudication of

those issues at the express request of plaintiffs during the confirmation proceedings, plaintiffs'

contention on this motion that the "savings clause" preserved their right, notwithstanding the

Confirmation Order, to further litigate the subordination issues on these Appeals, is nothing short

of remarkable.[18]  The savings clause did not give plaintiffs an additional free bite at the judicial

---

[16]    Of course, this express incorporation by reference of the summary judgment decision only makes
sense if the Bankruptcy Court was being presented with, and believed it was being presented with, the
same arguments and issues that were decided therein.

[17]    Plaintiffs argue that the Confirmation Order did not take away what the Plan preserved in Section
XI.C.4.  As demonstrated above (and as plaintiffs acknowledge), this provision was inserted in the Plan
early in the process to overcome plaintiffs' objections to the Debtors' disclosure statement (PB at 11), not
the Plan, and did not preserve their right to continue to litigate the subordination issue beyond entry of a
Final Order. Plaintiffs thereafter chose to have the issue resolved during the confirmation proceedings.  In
any event, to the extent that there is a conflict between the terms of the Confirmation Order and the terms
of the Plan (and defendants maintain no such conflict exists here), the Confirmation Order controls.
(Reinth. Aff. Ex. EE (Confirmation Order) at 14) ("[I]f there is any direct conflict between the terms of
the Plan and the terms of this Order, the terms of this Order shall control.").

[18]    Plaintiffs cite cases which stand for the proposition that claim preclusion does not apply if a
confirmed plan expressly reserves the right to assert such claim after the confirmation date.  (PB at 30-31).
Those cases have no application here.  What plaintiffs ignore is that, in each of them, the parties that
sought to rely upon a savings clause in the plan, unlike plaintiffs here, did not actually litigate their claims
during the confirmation hearing.  See Maxwell Commun. Corp. v. Societe Generale (In re Maxwell
Commun. Corp.), 93 F.3d 1036, 1045 (2d Cir. 1996) (language in plan did not expand court's post-
confirmation jurisdiction to include actions against foreign entities where no such jurisdiction existed pre-
confirmation and plan did not expressly call for such expansion); EXDS, Inc. v. Ernst & Young LLP (In re
EXDS, Inc.), 316 B.R. 817, 824 (Bankr. D. Del. 2004) (res judicata inapplicable where issue was not
addressed in plan confirmation process and the plan contained specific language preserving the debtor's
continued on following page . . . . . .

19

apple. Section XI.C.4 of the Plan preserved their right to litigate the enforcement of their alleged subordination rights under the Indenture to finality, once and only once. The confirmation proceedings became the battleground for the subordination issue at plaintiffs' instigation. Plaintiffs could have elected not to raise the subordination issue as part of a Plan objection and continued to litigate the issues solely in this proceeding, but they did not. Alternatively, they could have preserved their right to appeal by appealing the Confirmation Order, but they did not. In short, the "savings clause" dooms, rather than saves, these Appeals.

## CONCLUSION

For all of the foregoing reasons, each and every one of plaintiffs' appeals should be dismissed.

Dated:  May 6, 2005

Respectfully submitted,

PACHULSKI, STANG, ZIEHL, YOUNG,
JONES & WEINTRAUB P.C.

Laura Davis Jones, Esq. (DE Bar No. 2436)
David W. Carickhoff, Jr., Esq. (DE Bar No. 3715)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400

---

*continued from preceding page......*
right to bring the cause of action); *Eastern Air Lines, Inc. v. Brown & Williamson Tobacco Corp., (In re Ionosphere Clubs, Inc.)*, 262 B.R. 604, 613 (Bankr. S.D.N.Y. 2001) (*res judicata* inapplicable where confirmation order expressly reserved the debtor's right to pursue claim and claim was never previously addressed or adjudicated before any court); *see also Cent. States, Southeast & Southwest Areas Pension Fund v. Hunt Truck Lines*, 296 F.3d 624, 628-29 (7th Cir. 2002) (*res judicata* did not apply where issue of withdrawal liability was expressly preserved and not litigated in first proceeding); *Venuto v. Witco Corp.*, 117 F.3d 754, 760-61 (3d Cir. 1997) (denial of motion, without prejudice, to amend complaint to add additional party prevented judgment in first proceeding from precluding second cause of action).

20

William P. Weintraub, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

and

DEWEY BALLANTINE LLP
Richard W. Reinthaler, Esq.
Dianne F. Coffino, Esq.
1301 Avenue of the Americas
New York, New York 10019

Co-Counsel for Wells Fargo Bank,
National Association

and

RICHARDS, LAYTON & FINGER, P.A.

_____
Daniel J. DeFranceschi, Esq. (DE Bar No. 2732)
Paul N. Heath, Esq. (DE Bar No. 3704)
Karen M. McKinley, Esq. (DE Bar No. 4372)
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 658-6548

and

JONES DAY
Heather Lennox, Esq.
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114

Michelle Morgan Harner, Esq.
77 West Wacker
Chicago, Illinois 60601

Co-Counsel for
Oglebay Norton Company

21

and

COZEN O'CONNOR

Mark E. Felger, Esq.  (DE Bar No. 3919)
Chase Manhattan Centre
1201 North Market Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 295-2000
Facsimile:  (302) 295-2013

and
PROSKAUER ROSE LLP
Gregg M. Mashberg
1585 Broadway
New York, New York 10036

Co-Counsel for The Depository
Trust Company

22